CROUCHER *v*. WOOSTER.

1. DEEDS—RESERVATION REPUGNANT TO GRANT—FEE TITLE.
   Conveyance of platted lot adjacent to road between lot and lake, which reserved to grantors the use of the parcel for all purposes except residence purposes *held*, to have conveyed fee title subject to restrictions that the property should be used for residence purposes, the reservation of use to the grantors being repugnant to the grant.

2. SAME—RIPARIAN RIGHTS—HIGHWAY SEPARATING LOT FROM LAKE.
   Conveyance of fee title of lot abutting highway contiguous to lake carried with it, subject to express limitations appearing therein, the same riparian rights on the opposite side of the highway as it would, had the lot itself been contiguous to the shore line, in the absence of an intent appearing to the contrary.

3. SAME—RIPARIAN RIGHTS—NEGATIVE RECIPROCAL EASEMENTS.
   Deed reciting that grantees, in common with others, had use of
   lake shore for pleasure, but 'not commercial, boating pur-
   ·   poses *held,* to conclusively establish that all parties to the con-
   veyance had in mind something in the nature of a negative
   reciprocal easement in such riparian rights along said shore.

4. SAME—FEE TITLE—RIPARIAN RIGHTS.
   Grantees, through mesne conveyances from. common grantors,
   *held,* to have title to lot in fee and riparian rights appurtenant
   thereto in lake shore property on opposite side of highway
   contiguous thereto.

5. SAME—MORTGAGES—RIPARIAN RIGHTS.
   Grantees whose predecessors in title obtained deed carrying fee
   title to the lot and certain riparian rights appurtenant thereto
   before parties claiming mortgage lien under subsequent con-
   veyance from common grantor *held,* to have title and rights
   free from said lien.

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted June 5, 1934. (Docket No. 22, Calendar
No. 37,701.)   Decided May 17, 1935.

Bill by Arch J. Croucher and wife against Lacey
E. Wooster and wife, and Frank P. Klose and wife
to quiet title in plaintiffs and for an injunction re-
straining further trespass upon lands by defend-
ants.   Separate cross-bills by defendants Wooster
and Klose against plaintiffs and cross-defendants
Kai J. Nielson and wife and Deere & Company, an
Illinois corporation, to quiet title in defendants and
for an injunction restraining trespass.   Decree for
defendants on cross-bills.   Cross-defendants appeal.
Affirmed.

*Charles L. Dibble* and *Mason & Sharpe,* for de-
fendants.

*L. W. Beardsley* and *Worcester & Worcester* (*N.
A. Cobb,* of counsel), for cross-defendants.

FEAD, J.   Plaintiffs, claiming to be the owners in fee of certain property adjacent to and on the southerly side of Gull lake in Kalamazoo county, filed the bill of complaint herein to restrain alleged trespasses and to clear cloud from title.   In the record and briefs the parcel of land of. which plaintiffs assert ownership is described or referred to as bounded by Gull lake on the northerly. side and by a highway on the southerly side.   As appurtenant to this parcel plaintiffs also claim ownership of the land under the adjacent water to the north and to the center of the highway on the south.   This highway is one established by user.   But the record discloses that it has been surveyed on at. least three different occasions.   So far as disclosed these surveys were of a highway 66 feet in width.   For a number of years the northerly portion of this highway adjacent to Gull lake was occupied by the roadbed of an interurban railway.   While it may not have been of absolutely unvarying width so far as user is concerned, the record thoroughly establishes the fact that the highway was 66 feet in width and in this locality immediately adjacent to the shore line of Gull lake.   All parties litigant claim to hold by mesne conveyances from John J. Freer and wife, who formerly owned the farm of which the property here in suit was a part.   In 1900 Mr. and Mrs. Freer dedicated a plat of land on the southerly side of the highway, the plat being known as Bay View.   It consisted of 64 lots.   About half of these lots front north upon the highway.   The remainder of the lots are farther to the south and do not front upon the highway above mentioned.   The dedication of the plat describes it as "lying south of road."   Defendants Wooster are the owners of lot 26 and defendants Klose of lot 17, each lot fronting upon the road

and being directly across from the lake. As against plaintiffs' alleged ownership of the property on the north side of the highway and directly opposite the respective lots of defendants Wooster and Klose, the latter assert that their respective conveyances vest in them a fee title or at least the riparian rights on the shore of Gull lake opposite their respective properties; and they also assert riparian rights in common with others in that portion of the shore of Gull lake lying north of the Bay View plat. It is this asserted ownership on the part of defendants Wooster and Klose which plaintiffs Croucher allege constitutes a cloud upon the title to the property of which they assert ownership.

Cross-defendants Nielson claim to have a mortgage on the property north of the highway to which plaintiffs assert ownership in fee. This mortgage has been assigned as collateral security by the Nielsons to cross-defendant Deere & Company. Formerly Mr. and Mrs. Nielson asserted ownership in fee to land north of the highway. They conveyed this property to plaintiffs and took back a mortgage. This mortgage is the interest which cross-defendants now claim in the property; and, subject to certain admitted rights of easement, these cross-defendants claim the mortgage is a lien upon the lake front property opposite the lots owned by defendants Wooster and Klose respectively. The latter deny the validity of this mortgage lien.

Plaintiffs took no part in the hearing of this case. The Nielsons and Deere & Company were made parties defendant by the cross-bills of defendants Wooster and Klose, who seek to have their alleged riparian rights and ownership in property north of the highway and opposite their respective lots confirmed and to have it freed from the alleged lien of

the Nielson mortgage. This litigation has resolved itself into a contest between defendants Wooster and Klose on the one hand and cross-defendants Nielson and Deere & Company on the other, and decision is dependent upon the validity of the mortgage lien asserted by these cross-defendants. By decree in the circuit court the contention of defendants Wooster and Klose was sustained, and the alleged mortgage of the cross-defendants held to be a cloud on title and canceled insofar as it purported to be an incumbrance upon the property north of the highway and directly in front of the respective parcels owned by defendants Wooster and Klose. Cross-defendants Nielson and Deere & Company have appealed.

Obviously decision herein turns upon superiority of title as between that asserted by defendants Wooster and Klose on the one hand and the Nielson title on the other. All of these parties claim title from common grantors, Mr. and Mrs. Freer. Because the controlling facts are not the same in each case the rights of defendants Wooster and defendants Klose must be considered independently of each other.

*Wooster title.* As noted above both the Wooster title and the title giving rise to cross-defendants' alleged mortgage lien come from Mr. and Mrs. Freer who dedicated the Bay View plat in 1900. On May 6, 1904, Mr. and Mrs. Freer deeded lot 26 of Bay View plat to Jennie R. McBeth, and on November 14, 1924, she conveyed the same property to defendants Wooster. In each of these deeds the property conveyed is described as follows:

"Lot number 26 of Bay View plat as said plat was recorded November 19, A. D. 1900, upon page 15 of book 6 of Kalamazoo record book of plats. Said parties of the first part hereby reserve for them-

selves, their heirs and assigns, the use of said piece or parcel of land and all appurtenances thereunto belonging for all purposes except residence purposes, said party of the second part, her heirs and assigns, to have the use of said property for residence purposes at all times and forever. Said first parties also convey to said second party the use of lake shore on the north side of said Bay View plat, in common with others, for landing boats used for pleasure, but do not convey right to land boats for carrying freight or passengers for compensation nor the right to build docks or boathouse thereon.''

Decision herein necessitates placing a construction upon the above noted conveyances. It is obvious that the parties thereto had in mind the transfer of property rights on both the north and the south side of the highway. As bearing upon the effect of these conveyances it is important to note here that, regardless of what may be the condition at other points of the shore line north of the Bay View plat, immediately opposite the Wooster lot (and also the Klose lot hereinafter considered) there is no appreciable amount of land lying between the highway and the lake. In other words the lake shore is immediately adjacent to the north line of the highway. Notwithstanding the above quoted conveyance recites that the grantors reserve for themselves ''the use of said piece or parcel of land and all appurtenances thereunto belonging for all purposes except residence purposes,'' it must be held the fee to lot 26 was conveyed subject to the restriction that the property should be used ''for residence purposes.'' The reservation of use to the grantors was repugnant to the grant. Since lot 26 fronted upon the highway at a place where there was no land intervening between the lake and the

opposite side of the highway, the conveyance of the lot on the south side carried with it, subject to express limitations appearing therein, the same riparian rights on the opposite side of the highway as it would had the lot itself been contiguous to the shore line.

"Where a highway is laid off entirely on the owner's land, running along the margin of his tract, and he afterward conveys the land, the fee in the whole of the soil of the highway vests in his grantee. Likewise, where a street is laid out wholly on the owner's land and on the margin of his tract, so that he owns nothing beyond, the whole of the street opposite a lot bounded on the street passes to the grantee of the lot." 9 C. J. p. 203. See note citing numerous cases, including *Johnson* v. *Grenell,* 188 N. Y. 407 (81 N. E. 161, 13 L. R. A. [N. S.] 551).

As bearing upon the acquisition of riparian rights on the opposite side of the highway, we quote from the syllabus of the *Grenell Case:*

"Where the owner of an island in a navigable river, which had been laid out into lots, with boulevards, streets and roads, according to a map upon which the lots were designated by numbers, sold a lot abutting upon a boulevard running along and extending to the waters of the river, the lot being conveyed as 'Lot numbered 34 as laid out on the map,' * * * and the deed contains no language from which it can be inferred that the grantor intended to reserve any interest in the fee of the boulevard itself or in the appurtenant riparian rights, the legal title to the whole of the boulevard in front of the lot in question, together with the riparian rights, passed to the grantee of the lot, subject only to the public easement or right of passage over the boulevard." *Johnson* v. *Grenell, supra.*

See, also, *Haberman* v. *Baker,* 128 N. Y. 253 (28 N. E. 370, 13 L. R. A. 611); *Gifford* v. *Horton,* 54 Wash. 595 (103 Pac. 988); *Wait* v. *May,* 48 Minn. 453 (51 N. W. 471); *Mariner* v. *Schulte,* 13 Wis. 692; *Morgan* v. *Livingston,* 3 Mart. 11 (6 La. O. S. 19).

There is no former decision of this court holding either way upon the rule of law above announced, *i. e.,* in the absence of an intention of the parties appearing to the contrary, the conveyance of a parcel of land bordering on a highway contiguous to a lake shore conveys the appurtenant riparian rights. There is a conflict of authority on this phase of the law. See *Banks* v. *Ogden,* 2 Wall. (69 U. S.) 57; *Board of Trustees of Illinois and Michigan Canal* v. *Haven,* 11 Ill. 554; and *City of Demopolis* v. *Webb,* 87 Ala. 659 (6 South. 408). It may be noted that decision in *Banks* v. *Ogden, supra,* was based upon the finding that there was intervening land between that of the one who was seeking to assert riparian rights and the water's edge; while decision in *Board of Trustees of Illinois and Michigan Canal* v. *Haven, supra,* was determined by the law of Illinois by which the fee of the land under a dedicated street is held to be in the municipal corporation. Confessedly that would not be true in the instant case.

Appellants cite *Nichols* v. *New England Furniture Co.,* 100 Mich. 230, and *Fuller* v. *Bilz,* 161 Mich. 589. Neither of these cases is in point. Instead, in each of the cited cases it clearly appears that there was substantial and valuable land intervening between that owned by the one attempting to assert riparian rights and the water in and under which such rights were claimed. In the *Fuller Case* the land on the opposite side of the street from that owned by plaintiff was actually platted and the plat itself was a clear indication that the grantor in conveying lot 28

on the south side of a street or drive had no intention that the platted lot 54 on the opposite side would pass as an appurtenance or incident to alleged riparian rights. The opinion recites:

"According to the plat, not only the road, but a strip of ground several feet wide north of the road, lies between the northerly boundary of the land he (complainant) purchased and the water."

The instant case being one of first impression in this jurisdiction, we adopt the rule of law announced in the decisions first above cited as being more acceptable and based upon sounder reasoning than the opposite holding. It follows that because of their ownership in fee of lot 26 on the southerly side of the highway, there being no land intervening between the northerly side of the highway and the water's edge, the Woosters, in the absence of an intent appearing to the contrary, are possessed of riparian rights in the lake immediately opposite lot 26.

However, it appears from the conveyance above noted that the instruments constituting the Wooster chain of title contain a limitation or restriction. That is, the deed recites that the grantees have in common with others "the use of the lake shore on the north side of said Bay View plat * * * for landing boats used for pleasure, but does not convey right to land boats for carrying freight or passengers for compensation nor the right to build docks or boathouse thereon." This recital conclusively discloses that all parties to the conveyance had in mind something in the nature of a negative reciprocal easement in certain of the riparian rights along the north shore of the Bay View plat. Hence the grantees' riparian rights north of the highway were

burdened with a right in common with others to use the shore of the lake in the manner provided in the deed. Subject to the limitations and restrictions above noted, the Woosters through mesne conveyances hold from Mr. and Mrs. Freer title in fee to lot 26 and the riparian rights appurtenant thereto in the shore property on the opposite side of this highway.

It becomes important to determine as between the Woosters and cross-defendants Nielson and Deere & Co., which holds prior or paramount title to or rights in the shore property immediately north of lot 26. The chain of title through which the cross-defendants assert their rights comes from Alice V. Spier who took title as grantee in a deed given to her by Mr. and Mrs. Freer. This deed bears date September 22, 1910. But as above noted the Freer deed to Jennie R. McBeth, the source of the Wooster title, was given May 6, 1904. It follows therefore that Alice V. Spier obtained no rights to the lake property on the northerly side of the highway opposite lot 26; and persons claiming title thereto by reason of a deed from Alice V. Spier would have no power to place a valid mortgage lien on this lake property opposite lot 26. This is true because Mr. and Mrs. Freer had divested themselves of all their right and title to the shore property north of lot 26 (save possibly a limited right held in common with others to make certain use of the lake shore adjacent to the Bay View plat) prior to the date of their deed to Alice V. Spier. Since cross-defendants' alleged mortgage lien depends upon the title of Alice V. Spier it must be held ineffective as against the Wooster property.

*Klose title.* Decision as between defendants Klose and the cross-defendants asserting a mortgage lien is controlled by circumstances somewhat

similar though not the same as prevailed in behalf of defendants Wooster. Both the chain of title through which defendants Klose hold and that under which the cross-defendants assert a mortgage lien come from Alice V. Spier, a grantee of Mr. and Mrs. Freer. On March 30, 1912, Alice V. Spier gave a warranty deed of lot 17 to William P. Darling; and the latter on July 16, 1921, conveyed by warranty deed to defendants Klose. In each of these deeds the property is described as follows:

"Lot No. 17 of Bay View plat as shown by the record plat thereof on page 15 of book 6 of the Kalamazoo book of plats, together with cottage thereon; said first party also conveys the right to use the north shore on lake front of Bay View for the purpose of landing boats used for pleasure."

For the same reason as noted incident to the Wooster lot, it must be held that the conveyances in this chain of title carried as appurtenant thereto riparian rights in the shore property on the opposite side of the highway. The chain of title by virtue of which cross-defendants assert a mortgage lien upon the shore property directly opposite the Klose lot came from Alice V. Spier by assignment of the residue of her estate after her death. This, of course, was subsequent to the giving of the deed by Alice V. Spier to William P. Darling, who conveyed to defendants Klose. Since Alice V. Spier, by the Darling deed, had divested herself of her right, title and interest to the shore property opposite the Klose lot, it is obvious that the subsequent assignment of the residue of her estate passed no title thereto. It follows that the mortgagors in the mortgage under which cross-defendants are claiming had no rights in this particular shore property and they could not create a mortgage lien thereon. There-

fore the mortgage must be held invalid as against the property rights of defendants Klose.

In general as to the extent of the title of a grantee in a conveyance of land adjacent to a highway, street or alley, see *Loud* v. *Brooks,* 241 Mich. 452; also, *Scudder* v. *City of Detroit,* 117 Mich. 77.

The decree entered by the circuit judge is in accordance with the foregoing and is therefore affirmed. Costs to appellees.

POTTER, C. J., and NORTH, WIEST, BUTZEL, BUSH-NELL, and EDWARD M. SHARPE, JJ., concurred. NELSON SHARPE, J., did not sit.