STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. RE-06-244
                                                  TDW - CUM-7/30/2007

DIANE LEVASSEUR, et al.,

        Plaintiffs,

        v.                                        ORDER

JAMES DOUCETTE, et al.,

        Defendants.

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

JUL 30 2007

RECEIVED

        Before the court are motions by plaintiffs Diane and Paul Levasseur for summary judgment, for a preliminary injunction, and for a TRO.[1]  For their part, defendants James Doucette et al. have filed a motion for joinder or in the alternative for dismissal, arguing that there are Rule 19 parties whom plaintiffs are obligated to join.

        In their motion for a preliminary injunction, plaintiffs rely on the same arguments contained in their motion for summary judgment.  The court concludes that plaintiffs are not entitled to summary judgment and that they have not shown a sufficient likelihood of success on the merits of the legal issues involved to warrant a preliminary injunction.

        Plaintiffs' motion for a TRO is based on somewhat different grounds and will be discussed separately.


1.      Summary Judgment

        This case involves a dispute over the right to construct docks on lakefront land located on an arm of Sebago Lake.  Plaintiffs have a dock that is located immediately

---

[1]  Plaintiffs have also filed two unopposed motions – a motion to file a late reply to the counterclaim and a motion for leave to file a supplemental complaint.  Those motions are granted.

across Lake Shore Drive from their residence. Defendants, who live elsewhere in the subdivision but do not own waterfront lots, recently placed a dock in the same area, next to plaintiffs' dock.[2] Plaintiffs contend that defendants' dock invades their rights as riparian landowners and interferes with the use of the plaintiffs' existing dock.

The premise of plaintiffs' summary judgment motion is that, as the owners of Lots 115-17 and 123-24 and as the owners of the portion of Lake Shore Drive immediately adjoining Lots 115-17 and 123-24, they are riparian landowners who possess the sole right to place docks in the area between Sebago Lake and the portion of Lake Shore Drive that fronts their lots. The problem with this argument is that the applicable subdivision plan shows that there is a strip of land designated as "Park" between Lake Shore Drive and the lake. It is not disputed that this strip of land also exists on the face of the earth. Plaintiffs do not own the "Park" area, and the court finds no basis on this record to conclude that they have the sole right to place a dock in that area.

The court concludes from the subdivision plan that the waterfront strip of land designated as "park" was intended for the common use of all lot owners in the subdivision. Defendants have offered evidence that the particular portion of the park that is in dispute in this case is still owned by the Estate of Belle C. Leighton, as the successor of the interest held by the original developer. No matter who owns it, however, there is an issue as to the extent of the rights of subdivision lot owners in the "park" area. The issue – which this court previously addressed but did not decide in denying a motion for summary judgment in Cassidy v. Giroux, Docket No. CV-04-427

---

[2] The defendants' dock was apparently placed in its current location at the direction of the Town of Casco Code Enforcement Officer. See Defendants' Statement of Additional Fact ¶ 26; Plaintiffs' Response to Defendants' Statement of Additional Facts ¶ 26; April 27, 2007 Smedberg Affidavit ¶ 20-22. However, the Town has not been joined as a party to this action.

2

(Superior Ct. Cumberland County, order filed May 18, 2005) – is whether the park designation was intended to allow free access by all subdivision lot owners to the lakeshore, see Arnold v. Boulay, 147 Me. 116, 119, 83 A.3d 574, 576 (1951), or whether it granted all subdivision lot owners the right to use the area for recreational purposes including the placement of boat docks. See Close v. Eastman, 563 A.2d 1099, 1101 (Me. 1989).

In the former case, both plaintiffs' and defendants' docks would appear to interfere with free access to the waterfront. In the latter case, defendants would have as much right as plaintiffs to have a dock in the "park" area.

In either case, both summary judgment and a preliminary injunction should be denied. Summary judgment should be denied because in deciding what rights are appurtenant to the "park" designation, the court would be required to draw an inference with respect to the developer's intent. As the court noted in Cassidy v. Giroux, May 18, 2005 order at 6, competing inferences can be drawn on this issue and where competing inferences can be drawn, summary judgment is not appropriate. Accord, Arrow Fastener Co. v. Wrabacon, 2007 ME 34 ¶ 16, 917 A.2d 123, 126.

Plaintiffs are also not entitled to a preliminary injunction on this record. If the "park" designation is construed to allow the placement of docks, plaintiffs have no right to eject defendants' dock. If the "park" designation is construed to mean that all subdivision landowners have a right of free access to the lakeshore, then arguably both docks should be removed. As long as their own dock remains, however, plaintiffs are not entitled to equitable relief directing the removal of defendants' dock.

3

2. Motion for TRO

Plaintiffs' motion for a TRO is based on a narrower argument – that regardless of whether defendants have a right to place a dock in the disputed area, their dock is placed dangerously close to plaintiffs' dock and therefore interferes with plaintiffs' right to use the "park" area.

On this issue the court agrees with defendants that the record before the court does not establish that defendants' dock, as it is currently configured, interferes with plaintiff's rights. See Exhibit D to April 27, 2007 Smedberg Affidavit and May 15, 2007 Smedberg Affidavit ¶¶ 5, 6, 13. On July 27, 2007 the court also undertook a view of the two docks, and concludes that – under the circumstances that currently exist – plaintiffs have not established their right to a TRO.[3]

3. Motion for Joinder

In defendants' joinder motion, they argue that other persons who have docks placed in the park area along Lake Shore Drive are Rule 19 parties who must be joined if feasible. The court disagrees. The other dock owners will not be bound by any judgment in this action, and this lawsuit will not adjudicate their rights. The possibility

---

[3] The defendants' existing dock consists of a 90-foot section perpendicular to the shore and two "finger piers" extending at right angles from the left side of the main section. See Ex. D to April 27, 2007 Swedberg Affidavit. All the docks along this stretch of lakefront are close to one another. The clearance between plaintiffs' dock and defendants' dock is barely adequate so long as (1) defendants do not moor any boat on their inner "finger pier" that is longer than the finger pier itself, and (2) defendants do not moor any boat on the inside of the inner finger pier that is unusually wide. Apparently a pontoon boat was moored there at a prior time and this probably resulted in too little clearance.

The Levasseurs also have a mooring off their dock. In a southerly wind, the defendants' dock is far enough away from the mooring. In a northerly wind, however, the defendants' dock is probably too close. However, moorings can be moved, and the record does not demonstrate what governs placement of moorings in this area of Sebago Lake. On this record the court cannot determine whether plaintiffs should move their mooring or whether defendants should move or reconfigure their dock to give the mooring more room.

4

that any decision in this case may have a precedential effect on the rights of other dock owners does not make them Rule 19 parties.[4]

The entry shall be:

Plaintiffs' motion for summary judgment, for a preliminary injunction, and for a TRO are denied. Defendants' motion for joinder is denied. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED: July _30_, 2007

Thomas D. Warren
Justice, Superior Court

---

[4] The court expresses no opinion as to whether the Property Owners Association or the Town should be joined in this action, as those questions are not presented by the instant motion. Finally, plaintiffs have filed a motion arguing that defendants are required to join Wayne Pratt as an additional defendant on their counterclaim, but that motion has not been fully briefed.

07/30/2007              MAINE JUDICIAL INFORMATION SYSTEM         gmerritt
                 CUMBERLAND COUNTY SUPERIOR COURT         mjxxi013
                   PAGE A - ATTORNEY BY CASE VIEW

DIANE LEVASSEUR ET AL VS JAMES DOUCETTE ET ALS

UTN:AOCSsr  -2006-0132587                  CASE #:PORSC-RE-2006-00244

---

| SEL VD | REPRESENTATION | TYPE | DATE |
|---|---|---|---|
| 01 0000001391 ATTORNEY:KELLEHER, WILLIAM J | | | |
| ADDR:44 ELM STREET PO BOX 708 WATERVILLE ME 04901-0708 | | | |
|    F FOR:DANIEL COLELLO | DEF | RTND | 01/08/2007 |
| | | | |
| 02 0000001041 ATTORNEY:LOURIE, DAVID | | | |
| ADDR:189 SPURWINK AVENUE CAPE ELIZABETH ME 04107 | | | |
|    F FOR:DIANE LEVASSEUR | PL | RTND | 11/21/2006 |
|    F FOR:PAUL LEVASSEUR | PL | RTND | 06/18/2007 |
| | | | |
| 03 0000007194 ATTORNEY:PIERCE, KENNETH | | | |
| ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046 | | | |
|    F FOR:DONALD FRAZIER | DEF | RTND | 01/08/2007 |

---

| SEL VD | REPRESENTATION | TYPE | DATE |
|---|---|---|---|
| 03 0000007194 ATTORNEY:PIERCE, KENNETH | | | |
| ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046 | | | |
|    F FOR:SCOTT DWYER | DEF | RTND | 01/08/2007 |
| | | | |
| 04 0000003649 ATTORNEY:SPARKS, ANDREW | | | |
| ADDR:ONE MONUMENT WAY PORTLAND ME 04101 | | | |
|    F FOR:JAMES DOUCETTE | DEF | RTND | 01/10/2007 |
|    F FOR:THOEDORE SMEDBURG | DEF | RTND | 01/10/2007 |
|    F FOR:LEON ORDWAY | DEF | RTND | 01/10/2007 |

Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-06-244
TDW- C U M- 3/18/2008

DIANE LEVASSEUR, et al.,

Plaintiffs,

v.

JAMES DOUCETTE, et al.,

Defendants.

ORDER

DONALD L GARBRECHT
LAW LIBRARY

APR

The above-captioned case is before the court for decision on a stipulated record. At issue is whether plaintiffs are entitled to declaratory or injunctive relief to prevent the defendants from maintaining a dock on lakefront land located next to plaintiffs' own dock on an arm of Sebago Lake.

Plaintiffs own Lots 115-17 and 123-24 as shown on the 1932 map of the Sebago Lake Shores development that is Plaintiffs' Exhibit 1. The 1932 map shows that Lots 115-17 and 123-24 are located immediately inland of Lake Shore Drive, which is in turn separated from the lake by land designated as "Park" on the 1932 map. E.g., Plaintiffs' Ex. 1; Plaintiffs' March 30, 2007 SMF ¶ 4. At the time plaintiffs' predecessors in title were conveyed Lots 115-17 and 123-24, they were also conveyed the portion of Lake Shore Drive that adjoins those lots, subject to an easement for the benefit of the subdivider and others to use Lake Shore Drive.

Defendants own lots in the Sebago Lake Shores Development that are located further from the water. For a number of years plaintiffs have maintained a dock in the portion of the "park" area that lies between Lake Shore Drive and their lots. In 2006

defendants also placed a dock in the "park" area not far from plaintiffs' dock.[1] Defendants' dock is located in a part of the "park" area that adjoins the portion of Lake Shore Drive owned by plaintiffs.

Plaintiffs' position is that since they are the owners of Lots 115-17 and 123-24 and the portion of Lake Shore Drive adjacent to those lots, they possess riparian rights in the shorefront area fronting Lake Shore Drive and therefore are the only persons entitled to maintain a dock in that area. In making this plaintiffs either ignore the parkland that lies between Lake Shore Drive and the water or argue that they have become the owners of that park area by operation of law.[2]

The court has read and reread the case law from other states that plaintiffs have cited in support of their argument that they are riparian owners. None of that case law addresses the situation presented in this case – where there is a strip of park land never conveyed to plaintiffs that lies between the southerly side of Lake Shore Drive and the water.

Plaintiffs rely most heavily on cases from Michigan, most notably *Thies v. Howland*, 380 N.W.2d 463 (Mich. 1986). *Thies*, however, involved a situation where the landowners' property was separated from the water by a walkway that was immediately contiguous to the water. *See* 380 N.W.2d at 465. *Theis* would be instructive here if there were no parkland between Lake Shore Drive and the water. Notably, *Theis* relied on *Croucher v. Wooster*, 260 N.W. 739, 740 (Mich. 1935), in which the court stated

---

[1] The defendants' dock was apparently placed in its current location at the direction or with the approval of the Town of Casco Code Enforcement Officer. *See* Defendants' May 7, 2007 Statement of Additional Material Facts ¶ 26; Plaintiffs' Response to Defendants Statement of Additional Material Facts ¶ 26. The Town has not been made a party to this action, and neither plaintiffs nor defendants argue that the Town should be made a party. Both parties are solely seeking a ruling on whether plaintiffs' property rights include the exclusive right to place and maintain a dock in the disputed area.

[2] Plaintiffs have offered no evidence that the "park" area in front of their lots between Lake Shore Drive and the water was ever conveyed to them.

2

that there was "no appreciable amount of land lying between the highway and the lake. In other words, the lake shore is immediately adjacent to the north line of the highway" (emphasis added). In this case, in contrast, there is an appreciable area of land between Lake Shore Drive and the lake.

In *Dobie v. Morrison*, 575 N.W.2d 817, 819 (Mich. App. 1998), a lower Michigan court distinguished *Theis* in a case where a park separated residential lots from the waterfront, noting that a park "is not the same as a right of way." The *Dobie* court ultimately upheld the riparian rights of the plaintiff landowners closest to the water but this was because, unlike this case, the plaintiffs were the successors in interest to the plattors, 575 N.W.2d at 818, and therefore were the owners of the park area. In the case at bar, as discussed further below, plaintiffs are not the owners of the park area, which has instead been retained by the successor in interest to the original developer. As a result, plaintiffs cannot lay claim to exclusive riparian rights pursuant to the *Dobie* case.

Plaintiffs also rely upon a 1892 Minnesota case, *Wait v. May*, 51 N.W. 471 (Minn. 1892), and a 1907 New York case, *Johnson v. Grenell*, 81 N.E. 161 (N.Y. 1907). Like *Theis* and *Croucher*, both the Minnesota and New York cases involved situations where land was separated from the water by roadways that were immediately adjacent to the water. *See* 51 N.W. at 471; 81 N.E. at 161. The presence here of intervening parkland not owned by plaintiffs differentiates this case.[3]

---

[3] Plaintiffs also rely heavily on Tarlock, *Law of Water Rights and Resources* § 3:49 (2007) but the passage plaintiffs quote from that treatise involves lots "separated by a street or highway that is contiguous to the water" – which Lake Shore Drive is not. The Tarlock treatise goes on to refer to the *Dobie* case as applying a similar rule when the shorefront owners' property is subject to an easement. What distinguishes *Dobie* from this case, as noted above, is that in *Dobie* the property of the landowners whose lots were closest to the water extended to the waters edge subject to an easement. In this case plaintiffs' ownership stops at the outer edge of Lake Shore Drive and the park area (which plaintiffs do not own) separates plaintiffs' property from the water.

3

Finally, plaintiffs rely on an Oregon lower court case involving a landowner's rights to an area of shorefront that had been added to the existing land by accretion. *Stott v. Stevens*, 873 P.2d 380, 381 (Ore. App. 1994). Once the court found that the original boundary of plaintiff's land extended to the ocean, *id.*, it applied the principle that accreted land belongs to the owner of the adjacent land. 873 P.2d at 382. In this case, in contrast, the plaintiffs' original boundary did not extend to the water, nor was the intervening park area created by accretion.[4]

For purposes of this case it is undisputed that record title to the "Park" land in front of the portion of Lake Shore Drive owned by plaintiffs is not held by plaintiffs but is rather held by the Estate of Belle C. Leighton. Defendants' May 10, 2007 Statement of Additional Material Facts ¶ 28-30; Plaintiffs' Response to Defendants' Statement of Additional Material Facts ¶¶ 28-30.

Plaintiffs argue that just because record title remains in the Estate of Belle Leighton, this does not mean that plaintiffs are not the real owners. *See id.* However, their argument of ownership is based on the invalid contention, which the court has discussed above, that ownership of lots 115-17 and 123-24 and the portion of Lake Shore Drive in front of those lots necessarily includes ownership of the "park" area that lies between Lake Shore Drive and the water.[5]

The court concludes that neither plaintiff nor defendants are the owners of the "park" area that is in dispute in this case. The 1932 subdivision plan demonstrates that

---

[4] This case is more similar to *Coussens v. Stevens*, 113 P.3d 952, 960 (Ore. App. 2005), in which the court found that *Stott* did not apply where – even before any accretion – there was a strip of waterfront property between the water and the roadway bordering plaintiffs' lots.

[5] Plaintiffs acknowledge that in some places (but not with respect to the "park" area in dispute in this case) the Estate of Belle Leighton has in fact conveyed ownership of portions of the "park" area to some upland lot owners. Plaintiffs' Response to Defendants' Statement of Additional Material Facts ¶ 31. This undercuts plaintiffs' suggestion that even if they do not own the "park" area, that area is an orphan strip of land, claimed by nobody, that should be attached to plaintiffs' property for purposes of convenience.

4

in places the "park" area constitutes a strip of land along the water and in other places (*e.g.*, in the area of lots 584 and 114), it constitutes larger pockets of land. The court finds no persuasive evidence that it was the developer's intent to transfer ownership of the "park" land or riparian rights in the "park" land to those lot owners whose lots lie closest to the water. The court finds instead that the developer intended that all the lots in the development would have equal rights in the nature of an easement to the "park" area for access to the water.[6]

The remaining question is whether, regardless of ownership, plaintiffs nevertheless have the right to prevent defendants from maintaining a dock in the park area that lies between Lake Shore Drive and the water. On this issue the first inquiry involves the specific extent of the rights of subdivision lot owners in the park area – and whether those rights include the right to place and maintain docks. On this issue there is a Law Court case in which it was found that a comparable easement was intended to allow free access by all subdivision lot owners to the lakeshore, free from any buildings or obstructions. *Arnold v. Boulay*, 147 Me. 116, 119, 83 A.2d 574, 576 (1951). There is another Law Court case in which a waterfront area designated as a "reservation" on a subdivision plan was found to give subdivision lot owners a right in the nature of an easement for access to the shorefront for various purposes including the placement of boat docks. *See Chase v. Eastman*, 563 A.2d 1099, 1101 (Me. 1989).

One possible distinction between this case and *Chase* is that in *Chase* there was an express grant to all lot owners to use the reservation area in common so long as there

---

[6] It is obvious that lots closest to the water would have views of the lake not afforded to more inland lot owners. Beyond that, however, it would be plaintiffs' burden of proof to demonstrate that lots closest to the lake were also being granted some preference as to riparian rights and they have not met that burden. Indeed, even without considering burdens of proof the court would infer from the 1932 subdivision plan that all lots in the subdivision were intended to have equal rights to use the "park" area.

was not interference with the reciprocal rights of the other lot owners. *See* 563 A.2d at 1103. In light of *Arnold v. Boulay*, however, it is far from clear that such an express grant is required. *See* 147 Me. at 119, 82 A.2d at 576. In the court's view, any rights of lot owners in the park area must be subject to the implied requirement that there be no interference with reciprocal rights.

No evidence has been offered in this case as to the developer's intent with respect to the placement of docks in the park area.[7] Since plaintiffs are the party asserting that defendants' dock should be precluded, they have the burden of proof on this issue. *E.g., Hodgdon v. Campbell*, 411 A.2d 667, 670-71, (Me. 1980). Plaintiffs have failed to meet their burden of proof and are therefore not entitled to declaratory or injunctive relief excluding defendants' dock.

Looking beyond the issue of the developer's intent would involve the court in policy arguments that could be made in both directions. It does not appear that there is sufficient park area to allow all of the lot owners in the subdivision to place and maintain docks. This would argue in favor of precluding all docks, since the docks in existence obstruct the water access of lot owners who do not now have docks and do not have space to place docks in the immediate future. On the other hand, there is the practical reality of more than 40 docks currently occupying the park area during the summer months, and courts have an obligation to consider the practical consequences of their rulings. There is also evidence that at least in the recent past the Town Code

---

[7] At one point the defendants suggested that the court should consider the fact that at least 40 docks have been placed by lot owners in the park area as evidence in support of the conclusion that the common easement includes the right to maintain docks. *See* Defendants' Statement of Additional Material Facts ¶ 23 and Plaintiffs' Response thereto. The court, however, ruled that placement of such docks since 1932 (which occupy almost all of the park area in some places) was evidence of historical usage over time, not of the developer's intent. If the developer's intent is determative and there is no evidence that the developer intended docks to be placed or maintained an ongoing relationship to the property, the current presence of numerous docks along the water's edge cannot retroactively supply the necessary evidence of intent.

Enforcement Officer has played some role with respect to the allocation and placement of docks so that placement of docks is not purely subject to the law of the jungle.

Putting these issues aside, the court concludes that this case can alternatively be decided on equitable grounds – that where plaintiffs currently maintain a dock in the park area and where the court has found that plaintiffs and defendants have equal easement rights in the park area, the court would not as a matter of equity exercise its discretion to grant declaratory and/or injunctive relief to allow plaintiffs to prevent defendants from enjoying the same rights enjoyed by plaintiffs.

A different situation would be presented if defendants' use of their dock unreasonably interfered with plaintiffs' water access rights. Plaintiffs have, however, withdrawn their claim that defendants' activities at their dock constitute a nuisance and are unreasonably interfering with plaintiffs' enjoyment of the "park" area. The only claim plaintiffs are now making is that defendants are interfering with plaintiffs' alleged <u>exclusive</u> right to maintain a dock in the disputed area. So long as the presence of defendants' dock does not interfere with plaintiff's use of the waterfront any more than the presence of plaintiffs' dock interferes with defendants' use of the waterfront, plaintiffs are not entitled to declaratory or injunctive relief. *Cf. Poire v. Manchester*, 506 A.2d 1160, 1163 (Me. 1986).

The entry shall be:

Judgment entered for defendants on plaintiffs' claim for declaratory and injunctive relief precluding defendants from placing a dock in the "park" area adjacent to plaintiffs' property. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

7

DATED:     March 18, 2008

Thomas D. Warren
Justice, Superior Court

DIANE LEVASSEUR ET AL VS JAMES DOUCETTE ET ALS
UTN:AOCSsr  -2006-0132587                    CASE #:PORSC-RE-2006-00244
----------------------------------------------------------------------------
SEL VD                                REPRESENTATION TYPE      DATE
01 0000001391 ATTORNEY:KELLEHER, WILLIAM J
ADDR:44 ELM STREET PO BOX 708 WATERVILLE ME 04901-0708
     F FOR:DANIEL COLELLO                   DEF         RTND   01/08/2007


02 0000001041 ATTORNEY:LOURIE, DAVID
ADDR:189 SPURWINK AVENUE CAPE ELIZABETH ME 04107
     F FOR:DIANE LEVASSEUR                  PL          RTND   11/21/2006
     F FOR:PAUL LEVASSEUR                   PL          RTND   06/18/2007


03 0000007194 ATTORNEY:PIERCE, KENNETH
ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046
     F FOR:DONALD FRAZIER                   DEF         RTND   01/08/2007


                         *More Attorneys*
         Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:M

Select the EXIT KEY for page selection line.

DIANE LEVASSEUR ET AL VS JAMES DOUCETTE ET ALS
UTN:AOCSsr  -2006-0132587                           CASE #:PORSC-RE-2006-00244
------------------------------------------------------------------------------
SEL VD                                  REPRESENTATION TYPE      DATE
03 0000007194 ATTORNEY:PIERCE, KENNETH
ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046
    F FOR:SCOTT DWYER                        DEF         RTND   01/08/2007


04 0000003649 ATTORNEY:SPARKS, ANDREW
ADDR:ONE MONUMENT WAY PORTLAND ME 04101
    F FOR:JAMES DOUCETTE                     DEF         RTND   01/10/2007
    F FOR:THOEDORE SMEDBURG                  DEF         RTND   01/10/2007
    F FOR:LEON ORDWAY                        DEF         RTND   01/10/2007




         Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.